IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

FLIGHTSAFETY INTERNATIONAL, INC., )
)
          Plaintiff, )
vs. ) Case No. 13-CV-555-TCK-TLW
)
CROWNOVER ENTERPRISES, LLC, )
RICHARD CROWNOVER, and )
APACHE PROPERTIES, LLC, )
)
          Defendants. )

## OPINION AND ORDER

Before the Court are: (1) Defendant Apache Properties, LLC's Motion for Summary Judgment (Doc. 61); (2) FlightSafety's Motions for Summary Judgment (Docs. 56, 57, and 58); and (3) FlightSafety's Partially Unopposed Motion for Leave to Dismiss Cause of Action (Doc. 80).[1]

### I.  Factual and Procedural Background

For purposes of summary judgment, the following facts are undisputed. Plaintiff FlightSafety International, Inc. ("FlightSafety") entered into a series of purchase orders with Defendant Crownover Enterprises, LLC ("Crownover Enterprises"), which required Crownover Enterprises to produce large fiberglass panels for use as exterior and interior covers in FlightSafety's flight simulators. Crownover Enterprises maintained possession of the "tooling," which is a term for the molds used to manufacture the fiberglass panels, while it fulfilled these purchase orders.

---

[1] For reasons that remain unclear to the Court, none of the parties filed dispositive motions by the July 25, 2014 deadline in the scheduling order. At the pretrial conference held on September 17, 2014, the Court permitted the parties to file dispositive motions out of time, because there appeared to be numerous legal questions that could be resolved before trial. Therefore, the motions resolved herein only became ripe on November 10, 2014, one week before trial.

On December 5, 2012, FlightSafety issued Purchase Order 283474 to Crownover Enterprises for the manufacture of four tooling sets: two for FlightSafety's new 9-foot HEP line of flight simulators and two for the new 10-foot HEP line. This purchase order also required Crownover Enterprises to produce five sets of 9-foot HEP panels and five sets of 10-foot HEP panels using the manufactured tooling.[2]

Defendant Apache Properties, LLC ("Apache") owns a commercial building located at 2929A East Apache Street North in Tulsa County, Oklahoma. Apache leased space in this building ("Leased Premises") to Defendants Crownover Enterprises and Richard Crownover (collectively, "Crownover Defendants"). At some point, the Crownover Defendants' rent became past due, and Apache threatened eviction. For a variety of reasons, FlightSafety sought to remove its tooling from the Leased Premises in July 2013 but was prohibited from doing so by Apache. Apache claimed it had a lien on all property within the Leased Premises and was only willing to release the tooling if FlightSafety paid Apache $50,000.00.

On August 20, 2013, FlightSafety sent the Crownover Defendants a letter notifying them that FlightSafety was cancelling all open purchase orders. FlightSafety commenced this action on August 26, 2013. FlightSafety asserted claims for: (1) replevin, against the Crownover Defendants and Apache; and (2) tortious interference with contractual relations against Apache. As to the replevin claim, FlightSafety sought: (1) return of its property; (2) a finding of superior interest in

---

[2] Under this purchase order, Crownover Enterprises was responsible for two steps in the manufacturing process: (1) making the "tooling" or molds, and (2) manufacturing the panels themselves using the tooling. Therefore, the purchase order refers to both tooling and panels.

2

the tooling as to other parties; and (3) compensatory damages.³ Following entry of agreed orders of delivery by the Clerk of the Court, FlightSafety posted a $900,000.00 surety bond and recovered its tooling from the Leased Premises on September 3 and 26, 2013.

Crownover Enterprises asserted counterclaims against FlightSafety for: (1) breach of written contract, based on FlightSafety's alleged failure to pay for certain produced goods; (2) breach of oral contract, based on FlightSafety's alleged failure to comply with a three-year exclusivity agreement; and (3) intentional interference with prospective economic advantage. Apache asserted: (1) a cross-claim against the Crownover Defendants for breach of the lease agreement;⁴ and (2) a counterclaim against FlightSafety asserting that it has a landlord's lien over the tooling.

## II.     Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing

---

³ The replevin claim has recently been clarified by FlightSafety and is discussed in more detail below.

⁴ Apache and the Crownover Defendants resolved this claim, and the Court entered a stipulated judgment against the Crownover Defendants on July 15, 2014.

sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986). The relevant legal standard does not change where the parties file cross motions for summary judgment, and each party has the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law. *See Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

### III. Analysis of the Parties' Cross-Motions for Summary Judgment

#### A. FlightSafety's Motion for Summary Judgment on its Replevin Claim (Doc. 57)

FlightSafety brought this replevin action pursuant to title 12, section 1571 of the Oklahoma Statutes to recover certain personal property allegedly wrongfully detained by Defendants.[5] FlightSafety now seeks summary judgment on Defendants' objections to its replevin claim. Although Apache opposes FlightSafety's motion, the Crownover Defendants do not oppose the motion and do not make claim to any of the replevined property.

The plaintiff in a replevin action bears the burden to prove: (1) that he is the owner of the property in question or has a special interest therein; (2) that he is entitled to immediate possession of the same; (3) that the property is in the possession or control of defendant; and (4) that defendant has wrongfully detained the same from plaintiff. *Henderson v. Lacy*, 347 P.2d 1020, 1021 (Okla. 1959) (per curiam); *see also* Okla. Stat., tit. 12, § 1571 (establishing requirements for order of delivery).

---

[5] Federal Rule of Civil Procedure 64 provides that state law remedies for seizing property, including replevin, are available in a federal action.

FlightSafety removed tooling from the Leased Premises pursuant to the orders of delivery entered by the Clerk of the Court.[6] FlightSafety prepared a table identifying each piece of tooling it recovered through replevin and matching it to the corresponding FlightSafety purchase order. (*See* Doc. 57-4 at 5.) None of the tools recovered by FlightSafety were manufactured pursuant to a purchase order issued to Crownover. Forty-six of the fifty-three tools recovered were manufactured pursuant to purchase orders issued to Fiber-Tek, Cellixion Composites, Fiberweb Inc., and SC Piping. The remaining seven tools recovered were manufactured by Comtech, LLC, Mr. Crownover's former company ("Comtech").

Apache does not dispute that FlightSafety owns the forty-six tools manufactured by companies other than Comtech. With regard to the tools manufactured by Comtech, Apache relies on FlightSafety's standard "Purchase Order Terms and Conditions" to contend that "[t]he contract between FlightSafety and Crownover Enterprises places all of the incidence of ownership[] upon Crownover Enterprises." (Apache's Resp. Pl.'s Second Mot. Summ. Judg., at 8.)

The Court rejects Apache's arguments regarding the contract language. The terms and conditions clearly state:

> If the price stated on the face hereof includes the cost of any special tooling or special equipment fabricated or acquired by Seller for the purpose of filling this order, such special tooling and equipment . . . shall become the property of Buyer . . . .

---

[6] On September 18, 2013, FlightSafety filed a Notice of Request for Order of Delivery of Property and Right to Object (Doc. 26). The parties subsequently submitted a Stipulated Order of Delivery, which was entered by the Clerk of the Court on October 4, 2013 (Doc. 30), preserving Defendants' objections and authorizing FlightSafety to recover its equipment.

(Purchase Order Terms and Conditions, Doc. 57-4, at 25.) Accordingly, any tools manufactured by Comtech and still in the possession of the Crownover Defendants were owned by FlightSafety, not the Crownover Defendants. Moreover, Crownover Enterprises' subsequent use of the tooling under other purchase orders does not effectuate any transfer in ownership of the tooling. Under the terms and conditions, "[t]itle to any property furnished by Buyer hereunder on other than a charge basis shall, at all times, remain in Buyer." (*Id.*) Because Apache has offered no evidence disputing the remaining elements of FlightSafety's replevin claim, FlightSafety is entitled to judgment on Apache's objections to replevin.[7] No defendant has any claim to the property recovered by FlightSafety pursuant to the orders of delivery. FlightSafety shall be released from its surety bond obligations.

B. **FlightSafety's Motion for Summary Judgment on Apache's Counterclaims (Doc. 56)**

In its counterclaim, Apache asserts that it has a landlord's lien on all property within the Leased Premises: "Under the express terms of its lease, as well as pursuant to Oklahoma law, Apache is entitled to a landlord's lien against all tenants and sub-tenant's property located in the Facility . . . ." (Doc. 56, at ¶ 4.) FlightSafety now moves for summary judgment on Apache's lien claim.

Apache's counterclaim does not specify the Oklahoma statute upon which it is based. However, Apache's response to FlightSafety's motion (and Apache's own corresponding motion

---

[7] Apache's claim that it is entitled to a landlord's lien on the replevined tooling is addressed separately below.

for summary judgment) specifies that its lien claim is based on title 42, section 91A(A)(2)(a) of the Oklahoma Statutes, which provides:

> Any person who, while lawfully in possession of an article of personal property to which this section applies, renders any service to the *owner* thereof by furnishing storage, rental space, material, labor or skill for the protection, improvement, safekeeping, towing, right to occupy space, storage or carriage thereof, has a special lien thereon, dependent on possession, for the compensation, if any, which is due to such person from the owner for such service.

(emphasis added).

Apache has not demonstrated its entitlement to a lien under Section 91A. Apache has offered no evidence that it rendered any services to FlightSafety, as the owner of the tooling. *See supra* Part III.A (discussing FlightSafety's ownership of tools); *see also* Pl.'s Resp. to Apache's Mot. Summ. J., Ex. 16 (email from Apache to FlightSafety: "Since they are *your* tools and only subject to my lien." (emphasis added)). The undisputed facts indicate that any "service" provided by Apache was for the benefit of the Crownover Defendants, not FlightSafety. Additionally, Apache has offered no evidence that it was ever lawfully in possession of the tooling. "Lawfully in possession" means "a person has documentation from the owner or the owner's authorized agent . . . authorizing the furnishing of material, labor or storage . . . ." Okla. Stat. tit. 42, § 91A(H)(3). Apache did not lawfully possess the tooling by virtue of the Crownover Defendants' use and storage of the tooling at the Leased Premises. *See Watson v. McSoud*, 566 P.2d 171, 172 (Okla. Civ. App. 1977) ("[A] lessor surrenders both possession and control of land to the lessee retaining only a post-term reversionary interest. This means lessor retains not even a right of re-entry during term without permission of the lessee.") Accordingly, the Court finds that FlightSafety is entitled to summary judgment on Apache's counterclaim asserting a landlord's lien over the replevined tooling.

7

### C. FlightSafety's Motion for Summary Judgment on Crownover's Counterclaims (Doc. 58)[8]

#### 1. Breach of Written Contract

The undisputed facts demonstrate that FlightSafety and Crownover Enterprises entered into several written contracts by way of purchase orders, under which FlightSafety purchased parts for flight simulators from Crownover Enterprises. FlightSafety uses a standard form for its purchase orders. The terms and conditions incorporated within each purchase order give FlightSafety the following right to terminate purchase orders:

> The performance of work under this order may be terminated, in whole or from time to time in part by the Buyer in accordance with this article. Termination of work hereunder shall be effected by delivery to the Seller of a notice of termination specifying the extent to which performance of work under the order is terminated and the date upon which such termination becomes effective.

(Doc. 58-4 at ¶ 18(a) ("Section 18").) FlightSafety terminated its purchase orders with Crownover Enterprises by letter dated August 20, 2013, citing Section 18 as the basis for its termination. At the time of termination, Crownover Enterprises had twenty-three pending purchase orders with FlightSafety. FlightSafety paid Crownover Enterprises for all parts that had been delivered prior to its termination pursuant to Section 18 but refused to pay for parts completed but not yet delivered.

In its counterclaim, Crownover Enterprises contends FlightSafety has breached the purchase orders by failing to pay for any parts ordered and completed but not yet delivered at the time of termination. Under Oklahoma law, a claim for breach of contract requires three elements: (1) formation of a contract; (2) breach of the contract; and (3) actual damages suffered as a result of the

---

[8] Although there has previously been some dispute regarding this point, in response to Plaintiff's motion, the Crownover Defendants now concede that only Crownover Enterprises, and not Mr. Crownover, asserts counterclaims against FlightSafety.

breach. *Digital Design Grp., Inc v. Info. Builders, Inc.*, 24 P.3d 834, 844 (Okla. 2001). FlightSafety contends that Crownover Enterprises cannot demonstrate the second element, namely that FlightSafety has breached any of the purchase orders. FlightSafety argues that Section 18, which gives it the right of termination, also means that FlightSafety need not pay for the undelivered goods.

The Court finds that Section 18 is silent as to the crucial question presented – whether FlightSafety is obligated to pay for goods completed but undelivered at the time of termination. FlightSafety cites no provision in the terms and conditions which excuses FlightSafety from paying for such goods, nor has FlightSafety cited any general contract or UCC law which indicates FlightSafety should be excused from payment in such a situation. Therefore, FlightSafety's motion for summary judgment on Crownover Enterprises' breach of written contract claim is denied.

### 2. Breach of Oral Contract

Crownover Enterprises claims FlightSafety breached an oral agreement whereby FlightSafety agreed that Crownover Enterprises would be the exclusive provider of 9- and 10-foot panels for a period of three years beginning January 1, 2013. Crownover Enterprises' breach of oral contract claim requires the same elements as its breach of written contract claim: formation, breach, and damages. *See Digital Design Grp.*, 24 P.3d at 844.

It is undisputed that Mr. Crownover met with FlightSafety personnel in October 2012 to present his "Memo of Understanding," which proposed that Crownover Enterprises would produce necessary tooling and that "in order for [Crownover Enterprises] to recover its cost of fabricating the tools, [Crownover Enterprises] will provide the parts manufactured from said tools for both 9 foot and 10 foot systems for a period of three years starting January 1, 2013." (Pl.'s Third Mot.

9

Summ. J., at Ex. 10.)  FlightSafety never signed the "Memo of Understanding."  On October 25, 2012, Mike Halsey, a buyer for FlightSafety, sent an internal e-mail to Kenneth Spence stating "Compared to the other quotes [Richard Crownover's] looks the best because he is absorbing all of the cost of tooling and only charging us per part based on a 3 year agreement to buy from him.  He thinks he will recoup his costs by then based on what he thinks our rate is (we make no guarantees)."  (Doc. 64-17, at 1.)

After this meeting, FlightSafety issued Purchase Order 283474, ordering tools for 9- and 10-foot panels and ordering 9- and 10-foot panels themselves.  The purchase order specifically states that "[n]o agreement or understanding at variance herewith shall be binding upon the Buyer unless in writing and signed by its duly authorized representative."  Referring to Purchase Order 283474, Mr. Crownover testified that "[t]his purchase order was presented to me as a necessary evil and not the document that we agreed to.  It was in place of a contract that would have to go to New York, is what I was told, with witnesses."  (Dep. of Richard Crownover, 156:24-157:2.)

The Court finds that Crownover Enterprises has not offered evidence indicating it entered into an oral agreement with FlightSafety whereby FlightSafety agreed that Crownover Enterprises would be the exclusive manufacturer of certain panels for a period of three years.  The undisputed evidence indicates that FlightSafety rejected Mr. Crownover's proposal and entered into Purchase Order 283474 instead.  No evidence indicates there was ever any discussion of the alleged three-year exclusivity arrangement after the parties agreed to Purchase Order 283474, and Mr. Crownover's own testimony acknowledges that the purchase order was "in place of" the proposed "Memo of Understanding," which could not be accepted without further approval from FlightSafety.  Thus,

FlightSafety's motion for summary judgment on Crownover Enterprises' breach of oral contract claim is granted.

### 3.     Intentional Interference with Prospective Economic Advantage

Crownover Enterprises asserts a claim of intentional intereference with prospective economic advantage against FlightSafety, contending that Crownover Enterprises declined work from other businesses in reliance on FlightSafety's three-year exclusive guarantee. Specifically, Mr. Crownover testified that Crownover Enterprises hired extra staff and turned down work from Nordam as a result of its reliance on FlightSafety's assertion that Crownover Enterprises would be the exclusive provider of certain panels for three years. (*See, e.g.*, Dep. of Richard Crownover, 142:18-19 (testifying that Nordam "built 19 tools during that timeframe that would have come to me.").)

The elements of a claim for intentional interference with prospective economic advantage are: (1) the existence of a valid business relation or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the party whose relationship has been disrupted." *Gonzalez v. Sessom*, 137 P.3d 12345, 1249 (Okla. Civ. App. 2006). Oklahoma only recognizes this tort where "some intentional or improper conduct or means exist on the part of the defendant." *McNickle v. Phillips Petro. Co.*, 23 P.3d 949, 953 (Okla. Civ. App. 1999) (citing *Overbeck v. Quaker Life Ins. Co.*, 757 P.2d 846, 848 (Okla. Civ. App. 1984) (internal quotation marks omitted)). "Interference includes inducing third person not to enter into the prospective relation or preventing the other party from acquiring the prospective relation." *Boyle*

*Servs., Inc. v. Dewberry Design Group, Inc.*, 24 P.3d 878, 880 (Okla. Civ. App. 2001). FlightSafety challenges Crownover Enterprises's ability to demonstrate the second or third elements.

The Court finds that Crownover Enterprises has not presented evidence creating a question of fact as to the second or third elements. There is no evidence FlightSafety had any knowledge of the Nordam business or any other business expectation possessed by Crownover Enterprises. Further, there is no evidence that FlightSafety committed any intentional act aimed at inducing Nordam or any other third party not to enter into a business relationship with Crownover Enterprises. Instead, the evidence available suggests Mr. Crownover himself caused Nordam not to enter into a business relationship with Crownover Enterprises. (Dep. of Richard Crownover, 141:22-24 ("I went to [Nordam] and told them that I couldn't – I couldn't do any more because I was going to have my hands full with this [FlightSafety work].").) Accordingly, FlightSafety's motion for summary judgment on Crownover Enterprises' intentional interference claim is granted.

      **D.**      **Apache's Motion for Summary Judgment (Doc. 61)**

For the reasons *supra* Part III.B, Apache's Motion for Summary Judgment (Doc. 61), which requests judgment on its landlord's lien, is denied.

**IV.**      **FlightSafety's Motion to Dismiss Its Tortious Interference Claim (Doc. 80)**

On this date, the Friday before trial, FlightSafety moved to dismiss with prejudice its second cause of action for tortious interference with contractual relations against Apache. Apache does not object, and the Crownover Defendants have not informed FlightSafety as to whether they object. For good cause shown, the motion to dismiss is granted. FlightSafety's second cause of action for tortious interference with contract is dismissed with prejudice. Any reference to this cause of action has been removed from the parties' proposed pretrial order.

## V. Pretrial Order

In the parties' revised proposed Pretrial Order submitted November 3, 2104, FlightSafety included the following language in its statement of the case:

> FlightSafety seeks damages from Crownover Enterprises because FlightSafety advanced the sum of $100,344 to Crownover Enterprises on December 12, 2012, for production of certain parts but Crownover Enterprises failed to produce the parts. Flight Safety further seeks damages for its cost of covering Crownover's failures to deliver parts as required.

The Court could not locate this claim or similar language in the Amended Complaint, and it was unclear whether these damages were sought as part of FlightSafety's replevin claim or under an unpled breach of contract claim. The Court ordered Flight Safety to submit a proposed verdict form.

FlightSafety's proposed verdict form submitted November 13, 2015 includes only a replevin claim seeking damages against Apache. (Doc. 79.) In its motion to dismiss its tortious interference claim, FlightSafety further clarifies that it only seeks damages against Apache on its replevin claim and does not seek any damages against the Crownover Defendants. (Doc. 80.) Therefore, based on the most recent filings by FlightSafety, the Court has removed this language from the proposed pretrial order.

## VI. Conclusion

Plaintiff FlightSafety International, Inc.'s Motion for Summary Judgment on Counterclaims of Apache Properties, LLC (Doc. 56) is GRANTED. Plaintiff FlightSafety's Motion for Summary Judgment on Plaintiff's Replevin (Doc. 57) is GRANTED. Plaintiff FlightSafety's Motion for Summary Judgment on Counterclaims of Defendants Crownover Enterprises, LLC and Richard Crownover (Doc. 58) is GRANTED IN PART AND DENIED IN PART, as follows: (1) breach of

written contract: denied; (2) breach of oral contract: granted; and (3) intentional interference with prospective economic advantage: granted. Defendant Apache Properties, LLC's Motion for Summary Judgment (Doc. 61) is DENIED. Plaintiff FlightSafety's Partially Unopposed Motion for Leave to Dismiss Cause of Action (Doc. 80) is GRANTED.

The two remaining claims proceeding to trial are:

(1) FlightSafety's claim for replevin damages against Apache; and

(2) Crownover Enterprises' claim for breach of written contract.

**IT IS SO ORDERED this 14th day of November, 2014.**

**TERENCE C. KERN
United States District Judge**